Douglas E. Spelfogel
Richard J. Bernard
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
T:  (212) 682-7474
F:  (212) 687-2329
E:  rbernard@foley.com

*Proposed counsel to Alrose Allegria LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| ALROSE ALLEGRIA LLC, | Case No. 15-11760 (SHL) |
| Debtor. | |

**FIRST DAY DECLARATION OF ALLEN ROSENBERG**

I, Allen Rosenberg, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Designated Officer and Managing Member of Alrose Allegria LLC (the "Debtor").  I have been a principal of the Debtor since its inception on May 14, 2007.  My current duties include oversight and management over all aspects of the Debtor's financial matters.  I am authorized by the Debtor to submit this Declaration.

2.      On July 2, 2015 (the "Petition Date"), the Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") by filing a voluntary petition for relief with this Court.

3.      As the Managing Member of the Debtor, I am familiar with the Debtor's business operations and financial condition.  In discharging my duties, I have reviewed the Debtor's books and records, operations, and other information necessary to the restructuring sought to be effected by the Debtor.  My conclusions as to the objectives to be achieved through this chapter 11 case

are set forth at the end of this Declaration.  As a result of my first-hand experience, and through my review of the Debtor's books and records and other information, I have formed opinions as to the necessity of obtaining the relief sought by the Debtor in its "first-day" motions and applications filed concurrently with this Declaration.  The prosecution of these papers is necessary for the Debtor's reorganization, and to enable it to proceed effectively in this case.  The Debtor would be adversely affected if unable to obtain the relief sought therein.

4. I submit this Declaration in accordance with Local Rule 1007-2 and in support of the Debtor's first-day motions and applications.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinions based upon my experience and knowledge of the Debtor's operations and financial condition, or my consultation with the Debtor's professional advisors.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

5. Part I of this Declaration describes the Debtor, its business, its history, its need for chapter 11 relief, and its debt and equity structure.  Part II summarizes the Debtor's objectives in this chapter 11 case.

## I.

## BACKGROUND OF THE DEBTOR

### Overview of the Allegria Hotel and Recent Operations

6. Opened in 2009, the Allegria Hotel is a nine-story, 143-key mid-rise full-service boutique hotel and enjoys an exceptional beachfront location on Long Beach, New York with 130 feet of beach frontage and sweeping views of the Atlantic Ocean.  The property contains approximately 136,000 gross square feet and includes an extensive array of luxury amenities, including a ballroom, meeting space, fitness center, restaurant, lounge and piano bar.  Moreover,

the property includes a rooftop swimming pool and lounge, and is 0.3 miles from the recently approved six-acre iStar Superblock Development, which will include the construction of two of Long Beach's tallest luxury apartment towers with housing for 800-900 new residents.

7. The Allegria Hotel is presently the top performing and most luxurious hotel on Long Island and is currently operated by the Debtor free and clear of any management, branding or union contracts. The property is 50 minutes southeast of Manhattan and is commonly viewed by New York City residents as a beach destination alternative to The Hamptons.

8. In both 2012 and 2013, the operations at the Allegria Hotel produced approximately $13.1 million of total revenue per year and earned an average daily rate of $215 with occupancy of 68%. Adjusted 2013 total revenue, accounting for non-recurring hurricane-related revenue loss, was approximately $15.7 million. Moreover, adjusted NOI in 2013, after adding back one-time, non-recurring hurricane, management turnover and legacy expenses, was approximately $1.7 million.

**The Debtor's Business**

9. In May 2007, Alrose King David LLC ("AKD") acquired real estate located at 80 West Broadway, Long Beach, New York, along the boardwalk. Contemporaneously with such acquisition, the Debtor was formed in May 2007 to operate what would become the Allegria Hotel. The Debtor, along with its affiliate, AKD, has two members: Allen Rosenberg and SG Broadway LLC.

10. AKD purchased the property, which had been a nursing home, in August 2007 with acquisition loans from Brooklyn Federal Savings Bank totaling approximately $32 million

and secured by mortgages on the property. Brooklyn Federal Savings Bank extended an additional loan of $6.225 million, also secured by a mortgage on the property, in June 2009.

**The Debtor's History**

11. Starting in September 2009, before construction of the Allegria Hotel was complete, the Debtor began leasing the property from AKD pursuant to that certain Agreement of Lease.

12. At the Property, the Debtor operates the Allegria Hotel, a luxury oceanfront hotel that is open year-round and has 143 rooms and suites, six state-of-the-art conference rooms, and two 200+ seat ballrooms. The Allegria Hotel also has an on-site restaurant and fitness center, and provides guests with a multitude of other amenities.

13. In 2010, hurricane Irene caused significant damage to the Allegria Hotel. Insurance did not cover the cost of the needed repairs.

14. In August 2011, following actions by Brooklyn Federal Savings Bank, on its secured debt, and other vendors against AKD to collect, AKD filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Eastern District of New York. Following a reorganization finalized in June 2012, the Allegria Hotel continued operations with the Debtor as the operating entity. As a result of AKD's bankruptcy, the Agreement of Lease between the Debtor and AKD was terminated; however, AKD's confirmed plan of reorganization provides that the Debtor "may, at the sole discretion of [AKD], continue to occupy the Property to operate its business." No new lease or operating agreement was entered into by the Debtor and AKD, and, since confirmation of its plan, AKD has continued to permit the Debtor to operate the Allegria Hotel.

15. In October 2012, Hurricane Sandy caused extensive damage to the boardwalk bordering the hotel's beach and to the hotel itself, flooding the Allegria Hotel and requiring a complete renovation of the main floors. Debtor rebuilt and reopened the hotel in 2013 at a cost exceeding $3 million, receiving little insurance coverage. The Allegria Hotel did not return to "normal" operations until 2014.

16. From its opening in September 2009 to date, the Allegria Hotel did not enjoy an entire calendar year of "normal" operations, but looked forward to a prosperous 2015. For 2015, the Allegria Hotel is projected to generate approximately $16 million of gross revenue.

17. In the course of operating the Allegria Hotel, the Debtor incurred certain New York State tax liabilities beginning in 2010 that it was unable to pay in full when due. From time to time, New York State Department of Taxation and Finance ("NYS") would attach the Debtor's bank account, making operations difficult. The Debtor has requested an accounting with respect to these cash seizures from NYS to determine NYS' application of amounts received, but, to date, has received none.

18. The Debtor has been in regular communications with NYS and attempted to enter into an arrangement for the paydown of its tax liabilities. When the Debtor thought it came to an agreement on such terms with one agent at NYS, another agent would initiate a seizure or other inconsistent action. In 2014, the Debtor voluntarily and involuntarily paid over $1 million for back taxes to NYS. From January through May 2015, the Debtor voluntarily and involuntarily (through account seizures) paid in excess of $600,000 towards back taxes to NYS; and, regardless, the Debtor continued to maintain current NY sales taxes during this same period. The

unnoticed account seizures, however, impacted the Debtor's ability to remain current on its withholding tax obligations.

19. On Wednesday, July 1, 2015, NYS commenced a surprise raid on the Hotel Allegria just before lunchtime and seized the contents of approximately 50 vacant rooms in connection with the tax liability. Pictures of the sealed rooms were posted to Facebook and other social media almost instantly, generating concern from customers over reserved rooms and scheduled events for the July 4th weekend. As a result of the NYS "raid," customers threatened cancellation of future social and corporate bookings.

20. The Debtor's operations likely would not have been able to withstand the loss of more than 1/3 of its room revenue for the July 4th holiday weekend and indefinitely thereafter. The rooms were booked, and the negative publicity of forced cancellations threatened the continuation of the Allegria Hotel itself.

21. In order to maintain hotel operations, continue to generate revenue and to work out the tax liability in an orderly manner, the Debtor commenced the instant bankruptcy case by filing its petition for relief under chapter 11 on the Petition Date.

**Need For Chapter 11 Relief**

22. Given the difficulties in opening and the intervening shutdowns caused by major storms, the Debtor has been unable to operate the Allegria Hotel under normal conditions for a single calendar year, which has significantly impacted the Debtor's revenues and cash flow. It also precipitated a chapter 11 filing by AKD, the owner of the Allegria Hotel, in 2011 to restructure the mortgage on the hotel, which was successfully confirmed in June 2012.

15-11760-shl    Doc 7    Filed 07/07/15    Entered 07/07/15 18:57:37    Main Document
Pg 7 of 8

23. The operation of the Allegria Hotel is poised for success and has great upside potential. To achieve this success, however, the Debtor must deal with NYS in an orderly manner without threat of business disruption. Chapter 11 provides the Debtor with such opportunity.

**Debt and Equity Structure**

24. The Debtor has no secured debt.

25. NYS asserts tax obligations of approximately $6 million, including significant amounts for penalties and interest, some of which may be entitled to priority treatment under the Bankruptcy Code.

26. IRS asserts tax obligations of approximately $3-4 million, including significant amounts for penalties and interest, some of which may be entitled to priority treatment under the Bankruptcy Code.

27. In addition, the Debtor estimates that it has approximately $2 million of other unsecured debt.

28. The Debtor is owned 75% by Allen Rosenberg and 25% by SG Broadway

## II.

### DEBTORS' OBJECTIVES IN THESE CHAPTER 11 CASES

29. The Debtor requires relief under chapter 11 to enable it to attempt to work out its tax liabilities with NYS without threat of business interruption. In the event that the Debtor is unable to reach a consensual resolution with NYS, the Bankruptcy Code provides for treatment of tax and other liabilities to enable the Debtor to propose a plan of reorganization or implement

other exit strategies in an orderly way to maximize value of the Debtor's assets and operations for the benefit of all the Debtor's stakeholders.

30. The Debtor believes that it has a valuable core business, which can emerge from chapter 11 with a viable, successful business.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: July 7, 2015

                                             /s/ Allen Rosenberg
                                             Allen Rosenberg